**IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN THE DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIAN LUST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 08 C 7346 |
| Police Officer ANTHONY RAZZINO, Police ) | |
| Officer JAMES VALENTINE, Sergeant DINA ) | |
| VARDAL, Police Officer JAMES SPERANDIO, ) | |
| and the VILLAGE of OAK PARK, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On May 12, 2009, Plaintiff Brian Lust, by counsel,[1] filed a First Amended Complaint against Defendants Village of Oak Park ("Oak Park") and Oak Park Police Officers Anthony Razzino, James Valentine, and James Sperandio, as well as Sergeant Dina Vardal. Lust alleges claims of False Arrest (Count I), Excessive Force (Count II), and Failure to Protect/Intervene (Count III) pursuant to the Court's original jurisdiction. *See* 28 U.S.C. §§ 1331, 42 U.S.C. § 1983. In his First Amended Complaint, Lust also alleges state law claims of assault, battery, and intentional infliction of emotional distress (Count IV) based on the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendants' motion and dismisses this lawsuit.

---

[1] Plaintiff's counsel moved to withdraw as Plaintiff's attorney on January 13, 2010. (R. 39-1.) The Court granted counsel's motion to withdraw on January 20, 2010 and instructed Lust that he was required to comply with all established dates and deadlines. (R. 40-1.)

## BACKGROUND

I.  **Northern District of Illinois Local Rule 56.1**

Because Lust is now a pro se litigant, Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Specifically, Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

Although courts must construe pro se pleadings liberally, *see Johnson v. Hulett,* 574 F.3d 428, 433 (7th Cir. 2009), a plaintiff's pro se status does not absolve him from complying with

the federal and local procedural rules. *See Greer v. Board of Ed. of City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001); *see also McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). Because Lust has failed to file a proper Rule 56.1(b)(3)(B) response to Defendants' Rule 56.1(a)(3) Statement of Facts, the Court deems Defendants' supported factual assertions as admitted. *See Rao v. BP Prods. N. Am., Inc.,* 589 F.3d 389, 393 (7th Cir. 2009); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1.").

## II. Relevant Facts

### A. September 24, 2008 Incident

On September 24, 2008, Oak Park police officers James Valentine and Anthony Razzino were on duty working the day shift. (R. 36-1, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) Specifically, Officers Valentine and Razzino were assigned to work together in an unmarked squad car in the south zone of Oak Park – the area bounded by Harlem Avenue on the west, Austin Avenue on the east, Roosevelt Road on the south, and the Eisenhower Expressway on the north. (*Id*. ¶ 2.) The officers were assigned to be on the lookout in residential alleys in the south zone because a series of armed robberies had taken place by an assailant who accosted victims as they entered or departed their garages. (*Id*. ¶ 3.) The suspect was specifically identified as an African-American male, 5'8" to 5'10" tall, medium to heavy build, in his 20s, who used a weapon to rob people at their garages. (*Id*. ¶ 4.)

Officers Valentine and Razzino were driving in the vicinity of Fillmore Street between

Lyman and Taylor Streets in Oak Park when they observed an individual matching the suspect's description running south in the Lyman-Taylor alley toward their car. (*Id.* ¶ 5.) There was no indication that anyone was chasing the subject. (*Id.*) Officer Valentine, who was driving, maneuvered the car and turned southbound into the alley facing the subject, who was later identified as Lust. (*Id.* ¶ 6.) When Officer Razzino opened the door and began to approach Lust, Lust immediately ran east out of the alley, into a gangway, and into backyards. (*Id.*) Officer Razzino identified himself as a police officer and ordered Lust to stop at least two times. (*Id.*) At that point, Officer Razzino was about 3 to 4 garage lengths away from Lust. (*Id.*) Officer Razzino then chased Lust on foot. (*Id.* ¶ 7.) Lust initially ran east, went into a yard of an adjacent home, and then doubled back at which point Officer Razzino lost sight of him. (*Id.*) Officer Razzino then radioed his location to other officers in the vicinity. (*Id.*)

While Officer Razzino was chasing Lust on foot, Officer Valentine pursued Lust in his car ending up at the 1100 block of South Humphrey – approximately one block east and one-half block north of where the officers originally saw Lust. (*Id.* ¶ 8.) Thereafter, Officer Valentine engaged in a brief foot pursuit of Lust and closed in on him inside the front gate of a property located at 1122 South Humphrey. (*Id.* ¶ 9.) Officer Valentine then stated – "Police, stop, get on the ground" – after which Lust got on the ground. (*Id.*) Officer Valentine then handcuffed Lust, conducted a protective pat-down search, and found a plastic bag approximately six to twelve inches away from Lust. (*Id.*) The plastic bag contained adult videos, a pack of cigarettes, and other contents. (*Id.* ¶ 10.)

Officer Razzino arrived at the scene a couple of minutes later at which time Lust was already handcuffed. (*Id.* ¶ 16.) Officer Valentine asked Lust why he was running through the

4

alley and Lust replied that he was being chased by five guys. (*Id*. ¶¶ 14, 16.) Thereafter, Officer Razzino searched the immediate neighborhood for evidence of a crime. (*Id*. ¶ 17.) In particular, Officer Razzino searched from garage to garage to make sure the doors were secured, but found no evidence of any crime. (*Id*.) Officers Razzino and Valentine then conferred with their supervisor, Sergeant Vardal, who agreed that Officer Razzino should issue Lust a ticket under the Oak Park ordinance for disobeying the direction of a police officer. (*Id*. ¶ 19.) Lust maintains that thereafter the police officers arrested him.

Meanwhile, the only injury that Officer Valentine observed was that Lust had a cut on his hand. (*Id*. ¶ 20.) Lust told Officer Valentine that he cut his hand as he jumped fences while being chased by the police officers. (*Id*.) Officer Valentine then asked Lust if he wanted medical attention, but Lust refused. (*Id*.)

### B. The Lineup

Defendant Officer Sperandio is an Oak Park police officer who was working on an unrelated case on the morning of September 24, 2008. (*Id*. ¶ 25.) Officer Sperandio had a subject in custody and was waiting for the victim in that unrelated case to view a lineup for purposes of identification. (*Id*.) Once the time was scheduled for the lineup, Sperandio needed to find "fillers" for the lineup. (*Id*. ¶ 26.) "Fillers" are individuals who have similar physical characteristics to the suspect. (*Id*. ¶ 27.) The Oak Park police department often uses other individuals in custody as fillers or they seek volunteers and then pay them to participate in the lineup. (*Id*.)

On September 24, 2008, Officer Sperandio was driving to the west side of Chicago to obtain fillers for the lineup when he heard the radio transmission regarding the foot pursuit of

5

Lust. (*Id*. ¶ 28.) When Officer Sperandio heard about the chase, he discontinued his trip to Chicago and went to the scene to assist Officers Razzino and Valentine. (*Id*. ¶ 29.) Once he reached the scene, Officer Sperandio participated in the chase and held his position in an alley behind the fence where Officer Valentine apprehended Lust. (*Id*.) When Officer Sperandio saw Lust in custody, he thought Lust would be a good candidate as a filler for the lineup after which he approached Officers Valentine and Razzino and told them he wanted to use Lust for a lineup. (*Id*. ¶ 30.) According to the officers, Lust agreed to go to the station for the lineup. (*Id*. ¶ 31.)

Officers Valentine and Razzino then drove Lust to the Oak Park police station. (*Id*. ¶ 32.) The police officers put Lust in a lineup immediately upon his arrival at the station. (*Id*. ¶ 33.) Lust stayed in the lineup for about 15-20 minutes and after it was completed, he was given a ticket for violating the Oak Park Village Code and sent home. (*Id.* ¶¶ 35-38.)

### C. Lust's Deposition

At his deposition, Lust testified that he left his apartment to look for a job on the morning of September 24, 2008. (*Id.* ¶ 13.) The first thing Lust remembers is that he was running from some guys and that he was pulled over by the police five blocks later. (*Id.* ¶ 14.) Lust testified that he had no recollection of any of the streets that he was on and could not identify where he was running. (*Id.*) Furthermore, Lust testified that the guys chasing him wanted to beat him up. (*Id.*) Also, Lust recalls that while he was running, a police car almost struck him after which he tripped on a curb and fell on the sidewalk. (*Id*. ¶ 15.) Lust then testified that as soon as he tripped and fell, the police officers started "beating him up." (*Id*. ¶ 21.) More specifically, he testified that five or six police officers drew their weapons and aimed them at him. (*Id*. ¶ 22.) He also testified that a Latino police officer kicked him several times in the shoulder. (*Id*.) Lust

further stated that an African-American police officer hit him three times on the left side of the head with his fist and punched him three separate times on the left side of the chin. (*Id*. ¶ 23.) Also, Lust testified that one of the officers was holding "an injection needle" like the ones at the hospital when you receive a flu shot. (*Id*. ¶ 24.) Lust stated that a police officer injected the needle into his wrist, held it there for a second, and then pulled it out. (*Id*.) Lust believes that the officer injected him with a flu virus because after the needle was injected into him he felt dizzy and had a fever. (*Id*. ¶ 24.)

Uncontroverted evidence in the record, however, establishes that Officers Razzino, Valentine, and Sperandio are neither Latino nor African-American. (*Id*. ¶ 48.) Moreover, Lust went to the emergency room at Stroger Cook County Hospital three days after the incident on September 27, 2008, but the relevant medical records show no evidence of any head or shoulder injuries or trauma. (*Id*. ¶ 43.) His discharge summary from the hospital indicated that Lust received a flu vaccine while at Stroger hospital. (*Id*.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

7

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

## ANALYSIS

**I.     False Arrest – Count I**

Lust brings a Fourth Amendment false arrest claim in Count I of his First Amended Complaint. In their summary judgment motion, Defendants argue that Officers Valentine and Razzino had reasonable suspicion to stop Lust based on *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that they had probable cause to issue Lust a citation for violating an Oak Park ordinance. Accordingly, Defendants argue that Lust's false arrest claim must fail. *See McBride v. Grice,* 576 F.3d 703, 707 (7th Cir. 2009) ("Probable cause is an absolute bar to a § 1983 claim for false arrest."); *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution. This is so even where the defendant officers allegedly acted upon a malicious motive.") (internal citation omitted).

The Court first turns to whether the police officers had a reasonable suspicion to stop Lust under the totality of the circumstances known to the police officers at the time of the stop. *See United States v. Hicks,* 531 F.3d 555, 558 (7th Cir. 2008). "The Fourth Amendment protects

against unreasonable searches and seizures. Police are permitted, however, to make investigatory stops limited in scope and executed through the least restrictive means reasonable, referred to as *Terry* stops." *United States v. Grogg,* 534 F.3d 807, 810 (7th Cir. 2008). Whether a *Terry* stop is lawful depends on the police officer's ability to produce facts giving rise to a reasonable, articulable suspicion that a person has been, is, or is about to engage in criminal activity. *See United States v. Hampton,* 585 F.3d 1033, 1038 (7th Cir. 2009); *Hardrick v. City of Bolingbrook,* 522 F.3d 758, 762 (7th Cir. 2008). "Reasonable suspicion is more than a hunch but less than probable cause and 'considerably less than preponderance of the evidence.'" *Jewett v. Anders,* 521 F.3d 818, 823 (7th Cir. 2008) (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). When evaluating the reasonableness of a *Terry* stop, the Court examines the totality of the circumstances known to the officer at the time of the stop. *See Grogg,* 534 F.3d at 810; *see also Hicks,* 531 F.3d at 558 ("whether the officer had reasonable suspicion is an objective inquiry based on the totality of the circumstances known to the officer at the time of the encounter.").

Looking at the totality of circumstances known to Officers Razzino and Valentine at the time of the *Terry* stop, it is undisputed that the officers were patrolling the south end of Oak Park – an area where there had been a series of armed robberies by an assailant who accosted the victims as they were entering or leaving their garages in residential alleys. While on duty, the officers saw Lust, who met the description of the robbery suspect, running through the alleys and streets of Oak Park's south end. After Officer Razzino identified himself as a police officer, Lust continued to run from Officers Razzino and Valentine. Thereafter, Officer Valentine caught up with Lust stating "Police, stop, get on the ground," after which Lust got on the ground.

9

Officer Valentine then handcuffed Lust and conducted a protective pat-down search.

Based on these circumstances, Officers Valentine and Razzino had a reasonable suspicion to stop Lust and conduct a pat-down search. More specifically, Lust's unprovoked flight from the officers in a neighborhood known for residential robberies was sufficiently suspicious to warrant further investigation. *See Wardlow,* 528 U.S. at 124; *Jewett*, 521 F.3d at 824-25. Indeed, the Supreme Court has held that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow,* 528 U.S. at 124.

Meanwhile, after the officers lawfully stopped Lust and patted him down, they conferred with their supervisor, Sergeant Vardal, who agreed that Officer Razzino should issue Lust a ticket under the Oak Park ordinance for disobeying the direction of police officer. While Defendants deny that they arrested Lust, Lust maintains that the officers arrested him. Even assuming the police officers arrested Lust, they had probable cause to do so. "A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *McBride,* 576 F.3d at 707 (citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). In determining whether Officers Razzino and Valentine had probable cause to arrest Lust, the Court looks to the events leading up to the arrest from an objectively reasonable police officer's standpoint. *See United States v. Burnside,* 588 F.3d 511, 518 (7th Cir. 2009). Furthermore, whether the officers had probable cause to arrest Lust necessarily depends on the relevant Oak Park ordinance, which reads:

> 19-1-15: **Resisting Arrest; Hindering Police; Aiding Prisoners to Escape; Disobey Police Directive.**
>
> It shall be unlawful for any person to resist any member of the police department of the Village in the discharge of his duty or in any way interfere with or hinder or prevent any police officer from discharging his duty.

The undisputed facts and circumstances within Officer Razzino's and Valentine's knowledge at the time they arrested Lust for disobeying a police officer was that after Officer Razzino informed Lust that he was a police officer, Lust continued to run from the police. Officer Razzino then chased Lust on foot, but could not stop him, after which he radioed his location to other police officers in the area. Officer Valentine then pursued Lust in his car ending up approximately one block from where the officers originally saw Lust. Thereafter, Officer Valentine engaged in a brief foot pursuit of Lust and closed in on him inside the front gate of an Oak Park residence. Under these circumstances, Officers Valentine and Razzino had probable cause that Lust committed or was committing a violation of the Oak Park ordinance, namely, that Lust hindered the police officers by disobeying their directive to stop and by continuing to run from them. Because the officers had a reasonable suspicion to stop and investigate the situation and had probable cause to arrest Lust for violating the Oak Park ordinance, Lust's false arrest claim fails even assuming the officers arrested him. *See McBride*, 576 F.3d at 707. Therefore, the Court grants Defendants' motion for summary judgment as to Count I of the First Amended Complaint.

## II.  Excessive Force – Count II

In Count II of the First Amended Complaint, Lust alleges that Defendant Officers Razzino, Valentine, and Sperandio used excessive force when stopping him on September 24, 2008. "A claim that a police officer has used excessive force in the course of an arrest,

11

investigatory stop, or other 'seizure' of a citizen is addressed to the reasonableness of the seizure, under the standards established by the Fourth Amendment." *Gonzalez v. City of Elgin,* 578 F.3d 526, 539 (7th Cir. 2009). "An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Id.* (citation omitted). "Assessing whether the force used to effectuate a particular seizure is reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Stainback v. Dixon,* 569 F.3d 767, 772 (7th Cir. 2009) (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

In support of his excessive force claim, Lust relies on his deposition testimony that once he encountered the Oak Park police on September 24, 2008, they started "beating him up." In particular – although the uncontroverted evidence in the record establishes that Defendant Officers Valentine, Razzino, and Sperandio are white – Lust maintains that a Latino police officer kicked him three times and an African-American police officer hit him on the left side of the head with his fist and also punched him on the left side of the chin. Lust further testified that an unidentified officer was holding "an injection needle" after which the officer injected the needle into Lust's wrist, held it there for a second, and then pulled it out. Based on these facts, Lust has failed to establish that Officers Valentine, Razzino, and Sperandio were personally responsible for the deprivation of his constitutional rights. *See Johnson v. Snyder,* 444 F.3d 579, 583 (7th Cir. 2006). To clarify, a "plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v.*

*Anderson,* 538 F.3d 763, 776 (7th Cir. 2008)) (citation omitted). Here, there is no evidence in the record that Officers Valentine, Razzino, and Sperandio kicked, hit, or injected Lust as he claims.

Meanwhile, at summary judgment "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380. Here, Lust's version of the facts "is so utterly discredited by the record that no reasonable jury could have believed him." *Id.* In particular, despite unrefuted evidence to the contrary, Lust claims that an African-American police officer beat and kicked him in the head and that a Latino police officer kicked his shoulder. Moreover, despite Lust's claims of being beaten in the head and shoulder, his medical records and the lineup photograph taken on September 24, 2008 show no evidence of any head or shoulder injuries. (Defs.' Stmt. Facts ¶ 39.)

Accordingly, viewing the facts and all *reasonable* inferences in Lust's favor, he has failed to set forth sufficient evidence raising a genuine issue of material fact for trial that Officers Razzino, Sperandio, and Valentine used unreasonable force during the September 24, 2008, *Terry* stop or when they transported him to the Oak Park police station after his arrest. *See Compania Administradora de Recuperacion de Activos Administradora v. Titan Int'l, Inc.,* 533 F.3d 555, 562 (7th Cir. 2008); *Henning v. O'Leary,* 477 F.3d 492, 296 (7th Cir. 2007). Instead, there is unrefuted evidence that Officer Valentine did not use unreasonable force when restraining and handcuffing Lust, namely, Officer Valentine did not use greater force than was necessary under the circumstances. *See Gonzalez,* 578 F.3d at 539. Also, there is no evidence in

the record that Officers Valentine, Razzino, or Sperandio used any force when transporting Lust to the Oak Park police station or during the lineup. Therefore, the Court grants Defendants' summary judgment motion as to Lust's excessive force claim as alleged in Count II of the First Amended Complaint.

### III. Failure to Intervene – Count III

Next, in Count III of the First Amended Complaint, Lust alleges that Sergeant Vardal violated his constitutional rights by failing to intervene and prevent the police officers' use of excessive force. Because the Court has granted Defendant Officers' summary judgment motion as to Lust's excessive force claim, Sergeant Vardal is entitled to summary judgment on Lust's failure to intervene claim. *See Stainback,* 569 F.3d at 771 (failure to intervene claim entirely dependent on whether constitutional violation occurred based on alleged excessive force); *see also Fillmore v. Page,* 358 F.3d 496, 506 (7th Cir. 2004) ("there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention."). Moreover, there is no evidence in the record that Sergeant Vardal was aware of any facts concerning the alleged use of excessive force or that she had an opportunity to intervene. *See Montano v. City of Chicago,* 535 F.3d 558, 569 (7th Cir. 2008) (officer must have reason to know excessive force was being used and have a realistic opportunity to intervene). Therefore, Lust's failure to intervene claim fails.[2]

---

[2] Because Lust has failed to raise a genuine issue of material fact that Defendants violated his constitutional rights, the Court need not address Defendants' qualified immunity arguments. *See Bivens v. Trent,* 591 F.3d 555, 559-60 (7th Cir. 2010); *Williams v. Rodriguez,* 509 F.3d 392, 398 (7th Cir. 2007). Also, because a municipality's liability for a constitutional injury is predicated on the individual officers' liability, any constitutional claims against the Village of Oak Park necessarily fail. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed 2d 806 (1986)*; Treece v. Hochstetler,* 213 F.3d 360, 364 (7th Cir. 2000).

**IV.     State Law Claims – Count IV**

Finally, in Count IV of his First Amended Complaint, Lust alleges the state law claims of assault, battery, and intentional infliction of emotional distress pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).  The Court, however, declines to exercise its supplemental jurisdiction over these state law claims because the Court is dismissing – with prejudice – Lust's claims over which the Court has original jurisdiction, namely, his false arrest, excessive force, and failure to intervene claims.  *See Hansen v. Board of Trs. of Hamilton Se. Sch. Corp.,* 551 F.3d 599, 607 (7th Cir. 2008); 28 U.S.C. § 1367(c)(3).  As the Seventh Circuit teaches "[w]hen all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen,* 551 F.3d at 607; *see also Leister v. Dovetail, Inc.,* 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts.").  The Court therefore dismisses Lust's state law claims as alleged in Count IV without prejudice.

## CONCLUSION

For these reasons, the Court grants Defendants' Motion for Summary Judgment in its entirety.

Dated:  March 3, 2010


ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**